Moore, Appellant, vs. Roberts, Respondent.

*November 5 — December 1, 1885.*

HIGHWAYS. *(1, 2) To lands excluded therefrom: Connection with other highways. (3) Non-user or abandonment of part of highway. (4) Acceptance of damages for laying out: Estoppel.*

1. The order for laying out a highway under sec. 1275, R. S., need not state that it connects with another highway.
2. If it be proved that a highway laid out under sec. 1275, R. S., connects with a commonly used and traveled highway, it need not be further shown in order to sustain the validity of the former, that the latter is a *legal* highway.
3. Although only a portion of a highway has been continuously used, the other part does not for that reason cease to be a highway.
4. Acceptance of the damages assessed for the laying out of a highway over his land will estop the owner and those claiming under him from denying the legal existence of such highway.

APPEAL from the Circuit Court for *Grant* County.

The case is stated in the opinion.

For the appellant there was a brief by *Clark & Mills*, and oral argument by *Mr. Mills.*

For the respondent there was a brief by *Orr & Lowry* and *Bushnell & Watkins*, and oral argument by *Mr. Bushnell.*

ORTON, J. The appellant, the plaintiff in the circuit court, was the owner of the land west of the section line along which it was claimed a highway had been laid out three rods

wide, and erected a fence on his side of said section line near the middle of said highway, and the defendant, as overseer of highways of that town, by order of the supervisors, removed said fence as an obstruction of the same, and the plaintiff brought this suit for damages against him on account of such removal, and after trial a verdict was found and judgment was rendered in favor of the defendant, from which judgment the plaintiff has appealed to this court. The defendant justified the removal of said fence by seeking to prove (1) that there was a legal highway along said section line; (2) that it had been used and worked as such; (3) that it had never been abandoned; and (4) that the plaintiff was estopped by his grantor receiving the damages to said land by reason of said highway, which had been awarded to him therefor. These were the questions in controversy.

The highway was sought to be laid out under sec. 1275, R. S., upon the affidavit of one Thaddeus Cobb, who owned land south of the southern terminus thereof, to connect said land with a highway at the northern terminus thereof. The affidavit was lost and was probably never filed with the records, but the defendant introduced the order of the supervisors of the town in which said highway was laid out, which duly recited the making of said affidavit, the giving the proper notices of the time and place of the meeting and hearing said application, their meeting then and there, and their decision to lay out said highway, and their order laying out the same. This order appears to be according to law, and, by sec. 1289, it is made presumptive evidence of the facts therein stated, and such facts were not attempted to be disproved. The only objection to said order was that the highway therein described is not stated therein to connect with a highway at its northern terminus, but it was proved by oral testimony that it did so connect with a commonly used and traveled highway. There is nothing

in the statute that makes it necessary that such fact should be stated in the order. The highway is sufficiently described by its distance between two certain points on and along the section line. This is sufficiently certain in order to ascertain whether it does, in fact, connect with another highway.

It was further objected by the learned counsel of the plaintiff that such other highway should be proved to be a legal highway. If that were necessary to be proved to sustain such a highway, so that it shall not be a mere *cul-de-sac*, then it would be necessary further to prove that the highway with which it so connects, connects with another *legal* highway, and that with another, and so *ad infinitum*, for stopping anywhere would make a *cul-de-sac*, and such a highway must connect with another highway and not with a *cul-de-sac*. This would impose a very burdensome, if not an impossible, duty upon the town in order to maintain such a highway. The applicant who seeks to have such a highway laid out does so because " his lands are shut out from all public highways; " and if the highway with which he seeks connection is opened and used as a public highway, the purpose of the applicant, as well as of the statute, is satisfied. That is just what he seeks to do, and that is, to use such a highway in common with the public. For such purpose it must be presumed a highway, and it is very doubtful whether its legality can be called in question in a case involving only the legality of the highway laid out to connect with it; for that is really the only issue.

*Secondly.* The highway in question has been used and traveled when necessary all the time since it was laid out in 1873, and worked upon where necessary, according to the undisputed evidence in the case. When first laid out, there appears to have been a very poor and dilapidated fence along or near the section line and center of said highway, and that the travel sometimes was through and on the west

side of it, and the part of the highway on the east side of said fence has been constantly used when necessary, ever since it was laid out, as the main traveled way out to and upon the highway with which it is connected at the north end. But the contention in respect to such user is that, inasmuch as the west half of such highway has not been used, at least that part of it has ceased to be a highway by non-user and abandonment. Upon the same ground all parts of any highway not actually traveled, or kept suitable for travel, would cease to be parts of such highway, and might be treated as abandoned. This would be placing highways on too narrow ground to be of much use to the public, and make them liable to abandonment by wilful encroachment. We think there was sufficient evidence that the highway has been worked and traveled as such when necessary, during all the time since it was laid out; and, *thirdly*, that there has been no abandonment of it by the public.

*Fourthly.* The testimony was that one Eastman, the grantor of the plaintiff, had his damages assessed for this highway at $15, and they were paid to him and accepted by him in full satisfaction thereof, and that he fully recognized said highway as lawfully laid out, and asked the privilege of his neighbors to leave some part of his fence therein for a short time only. This was a complete dedication of his land to the public for such highway, and it has been accepted as such, and the plaintiff, as the present owner of said land, is estopped to deny the legal existence of said highway. It was a complete dedication, and is an estoppel *in pais*. *Connehan v. Ford*, 9 Wis. 244; *Dubuque v. Maloney*, 9 Iowa, 455; *Karber v. Nellis*, 22 Wis. 215; *Schatz v. Pfeil*, 56 Wis. 429.

This disposes of all the questions raised by exceptions to evidence, instructions given to the jury, and to refusal to instruct as requested. The verdict of the jury was war-

ranted by the evidence, and the motion for a new trial was properly overruled.

*By the Court.*— The judgment of the circuit court is affirmed.